**FILED**

**NOV 0 3 2009**

CLERK

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| | | |
|---|---|---|
| SANDRA WALBY and BRUCE WALBY, | ) | Case No.: O9- 5O97 |
| | ) | |
| Plaintiffs, | ) | |
| | ) | COMPLAINT |
| v. | ) | |
| | ) | |
| LEHMAN TRIKES U.S.A., INC and MIKE | ) | |
| RUSK, JR., | ) | |
| | ) | |
| Defendants. | | |

Sandra Walby and Bruce Walby for their Complaint against the Defendants state and

allege as follows:

<u>JURISDICTION AND VENUE</u>

1.       Sandra Walby timely filed a Charge of Discrimination with the South Dakota

Department of Labor, Division of Human Rights.

2.       The South Dakota Department of Labor, Division of Human Rights filed a

Determination of Probable Cause July 29, 2009 finding in favor of Sandra Walby with respect to

her charges of hostile environment sexual harassment, retaliation and constructive discharge.

3.       The South Dakota Department of Labor, Division of Human Rights

administratively closed its file with respect to Sandra Walby's Charge of Discrimination against

Lehman Trikes U.S.A., Inc. on August 13, 2009 thus exhausting the administrative process with

respect to Ms. Walby's Charge based on state law.  S.D.C.L. § 20-13-35.1.

4.       On September 30, 2009, the Equal Employment Opportunity Commission issued

a Notice of Right to Sue, thereby exhausting the administrative process with respect to Ms.

Walby's charges based upon federal law.

5.     This Court has subject matter jurisdiction over this matter because this Complaint asserts claims arising pursuant to the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* thereby creating federal question jurisdiction pursuant to 28 U.S.C. § 1331.

6.     As to claims set forth in this Complaint based upon state law rather than federal law, this Court has subject matter jurisdiction over such claims as supplemental claims pursuant to 28 U.S.C. § 1367(a).

7.     This case is properly venued in the U.S. District Court, District of South Dakota, Western Division because the conduct which gives rise to this lawsuit occurred in Spearfish, Lawrence County, South Dakota.  See 28 U.S.C. § 1391(b).

PARTIES

8.     Plaintiff Sandra Walby is a resident of Spearfish, Lawrence County, South Dakota.

9.     Plaintiff Bruce Walby is a resident of Spearfish, Lawrence County, South Dakota.

10.     Defendant Lehman Trikes U.S.A., Inc. is a Nevada corporation authorized to conduct business in the state of South Dakota, and at all times relevant to this Complaint was conducting business at 125 Industrial Drive, Spearfish, South Dakota.

11.     Defendant Lehman Trikes, U.S.A., Inc. is an "employer" as that term is defined in 42 U.S.C. § 2000e(b) and in S.D.C.L. § 20-13-7(7).

12.     On information and belief, Defendant Mike Rusk, Jr. is a resident of Spearfish, Lawrence County, South Dakota.

## FACTUAL ALLEGATIONS

13.     Sandra Walby began working for Lehman Trikes U.S.A., Inc. in Spearfish, South Dakota on January 17, 2008.

14.     At all times relevant to issues raised by this Complaint, Mike Rusk, Jr. was employed by Lehman Trikes, U.S.A., Inc. as a Warehouse Manager, and was in a supervisory capacity over Sandra Walby.

15.     During Ms. Walby's employment under Mr. Rusk's supervision, she observed Mr. Rusk's behavior to be boorish and offensive.  He was verbally and physically abusive to employees, used filthy language, made offensive gestures, displayed offensive materials on his computer monitor, and generally intimidated employees under his supervision.

16.     On October 14, 2008, a co-worker expressed complaints to Sandra Walby concerning Mr. Rusk's behavior and asked for advice as to what should be done about it.

17.     Sandra Walby consulted with upper-management personnel regarding the co-worker's complaints and was told that a complaint should be lodged with the Human Resources Department.  Upon information and belief, the co-worker followed Sandra Walby's advice and reported Mr. Rusk's behavior to the Lehman Trikes U.S.A., Inc.'s Human Resources Department that same date.

18.     The following day, October 15, 2008 Sandra Walby was working in the warehouse getting things in order for the next day's work.  Other co-workers had gone home for the day, and Ms. Walby and Mr. Rusk were the only ones present in the warehouse.  As Ms. Walby was concentrating on her work activities, Mr. Rusk snuck up behind her, grabbed her by her hips, lifted her and pulled her hips back so that he could thrust his penis into her buttocks.  Although Mr. Rusk's penis was inside his clothing Ms. Walby could feel that his penis was erect

at the time.  As Mr. Rusk was doing so, he made a statement to the effect that "Now that's what I'm talking about."  He then set Sandra Walby down and walked away.  As he walked away he turned his head to the side and Ms. Walby could see that he was grinning about his behavior.

19.     After this sexual assault on her by Mr. Rusk, Sandra Walby was left startled and shaken.  When she was able to regain her composure and consider what to do she immediately decided to complain to the Human Resources Department.  She went to the Human Resources office but no one was there at that time.

20.     Upon information and belief, Ms. Walby alleges that Mr. Rusk sexually assaulted her in retaliation for Sandra Walby assisting the co-worker in asserting complaints about Mr. Rusk's behavior to the Human Resources Department.

21.     On October 16, 2008, the morning after Mr. Rusk sexually assaulted Sandra, an employee meeting was held in the warehouse area.

22.     During the employee meeting Sandra Walby confronted Mr. Rusk regarding his behavior the preceding day.  She described what he had done to her and told him such conduct was unacceptable.  Rather than denying what had occurred, Mr. Rusk informed Sandra Walby in front of other employees that he would not do that again.

23.     Following that employee meeting Sandra Walby went to the Human Resources Department on several occasions seeking to file complaints about Mr. Rusk's behavior.  However, on each occasion, someone else was with the Human Resources officer and Sandra was unable to file her complaint.

24.     Near the end of Sandra Walby's shift on October 16, 2008, she was approached by the Human Resources Director, Rilea Moyer.  Ms. Moyer informed Sandra Walby that she

was there to investigate a complaint about Mr. Rusk that had been lodged by one of Sandra's co-workers.

25.     During Sandra Walby's conversation with Ms. Moyer, Sandra informed Ms. Moyer regarding the incident which had occurred on October 14, 2008. Ms. Moyer informed Sandra that she would look into it.

26.     Despite having informed the Human Resources Director about Mr. Rusk sexually assaulting Sandra Walby, no action was taken to transfer Sandra from the area where Mr. Rusk was working, nor did Lehman Trikes U.S.A., Inc. take any action to transfer Sandra Walby out from under Mr. Rusk's immediate supervision. Instead, Sandra was required to continue working in the very same warehouse where the sexual assault had occurred in close proximity to Mr. Rusk, the man who had sexually assaulted her just a few days earlier.

27.     On October 22, 2008 Lehman Trikes U.S.A., Inc. had still taken no action with respect to Sandra Walby's complaint regarding Mr. Rusk's behavior on October 14, 2008. Exasperated and frustrated by the lack of response to her complaint, and intimidated and fearful due to having to continue working under the supervision of, and in close proximity to, Mr. Rusk, Sandra filed a second complaint with the Human Resources Department.

28.     At the time Sandra Walby made her second complaint to the Human Resources Director, Ms. Moyer, Sandra became overwhelmed with emotion and was about to break out in tears. Ms. Moyer showed no compassion whatsoever and stated: "Please don't boo hoo in here. I don't like that."

29.     Before Sandra Walby complained to Human Resources regarding Mr. Rusk's behavior, Sandra would occasionally work overtime in order to ensure workers had the materials they needed to perform their work the following morning. Following her complaint, Sandra

Walby was told by Mr. Rusk that she could no longer work overtime and was expected to have all of her work completed by 4:00 p.m. every day.  He warned her that failure to have all of her tasks completed by that time would result in disciplinary action being taken against her.

30.     Prior to complaining to Human Resources regarding Mr. Rusk's behavior, other employees of Lehman Trikes U.S.A., Inc. would occasionally assist Sandra Walby in performing her tasks at times when they had no other work to do.  Following her complaint to Human Resources regarding Mr. Rusk's behavior, co-workers were instructed that they were no longer allowed to assist Sandra Walby in any way.

31.     After Sandra Walby submitted her complaint to Human Resources regarding Mr. Rusk's behavior, other employees were instructed to follow Sandra around the workplace.  Upon information and belief, this surveillance was intended to attempt to look for any flaw in her performance that could be used as a basis to either issue disciplinary action against her or terminate her employment.  Upon information and belief, no other employees have been singled out for such surveillance.

32.     On October 23, 2008, Sandra Walby discussed her complaint with an Executive Vice-President, Mr. Kennon Hines.  Mr. Hines told Sandra Walby that he would get to the bottom of things but never got back in touch with her.

33.     On October 24, 2008 a meeting was held with the entire warehouse staff.  The Human Resources Director, Rilea Moyer was there as well as Mr. Timothy Kling who was at that time the Chief Financial Officer for Lehman Trikes.

34.     At the meeting, Mr. Kling spoke first and indicated that Mr. Rusk had something he wanted to say.  Mr. Rusk then said he had made some bad choices but things would change and get better.

35.     After Mr. Rusk made his statement, Mr. Kling said that Lehman Trikes had investigated complaints regarding Mr. Rusk and had determined that Mr. Rusk was the right man for the job.  The meeting concluded and people returned to their work.

36.     Throughout the time period set forth above, Sandra Walby had continued to be under Mr. Rusk's supervision and had continued to have to work in the same location where Mr. Rusk had sexually assaulted her.

37.     Given the lack of any response by Lehman Trikes U.S.A., Inc. to Sandra Walby's complaints regarding Mr. Rusk, and given Mr. Kling's statement at the employee meeting indicating that Mr. Rusk was the right man for the job, it became apparent to Sandra Walby that Lehman Trikes U.S.A., Inc. did not intend to take any disciplinary action against Mr. Rusk nor did it intend to take any action to transfer or reassign Sandra Walby so that she would no longer be forced to work in close proximity to, and under the supervision of, Mr. Rusk, the man who had sexually assaulted her.

38.     Finding the working conditions intolerable, Sandra Walby submitted her resignation to Ms. Moyer, the Human Resources Director, on October 28, 2008.

39.     On October 30, 2008 Sandra Walby received an Interoffice Memorandum from the Human Resources Director, Rilea Moyer.  The memorandum states that Walby's complaint against Mike Rusk was found to have merit, that appropriate corrective actions had been initiated, and that Lehman Trikes U.S.A., Inc. was closing its investigation.

40.     Despite finding Sandra Walby's Complaint was meritorious Lehman Trikes US.A., Inc. did not offer to rehire Ms. Walby.

COUNT I:  HOSTILE ENVIRONMENT SEXUAL HARASSMENT

Paragraphs 1-40 above are incorporated herein by this reference.

41.     Sandra Walby was a member of a protected class because she was female.

42.     Sandra Walby was subjected to unwelcomed sexual harassment from Mr. Rusk in that he sexually assaulted her, used filthy language, made offensive gestures, and displayed offensive materials on his computer monitor.

43.     Mr. Rusk's sexual harassment toward Sandra Walby was due to the fact that she was female.

44      Mr. Rusk's harassment of Sandra Walby so poisoned the workplace environment that it affected the terms, conditions and privileges of her employment.

45.     Defendant Lehman Trikes U.S.A., Inc. is liable for Mr. Rusk's sexual harassment of Sandra Walby because he was Ms. Walby's supervisor at all times relevant to Ms. Walby's Complaint, and because Lehman Trikes U.S.A., Inc. knew or should have known of Mr. Rusk's sexually inappropriate behavior including his vulgar language, offensive gestures, and his tendency to display sexually explicit and offensive material on his computer monitor where other employees were able to observe it, yet failed to promptly take reasonable measures to protect employees from Mr. Rusk's sexually harassing behavior.

46.     Defendants' conduct violates Title VII of the Civil Rights Act of 1964 and the South Dakota Human Relations Act of 1972.

47.     Defendants' violations have caused Plaintiffs to incur damages including but not limited to lost wages and benefits, mental and emotional distress, loss of consortium, shame, humiliation and embarrassment.

COUNT II:  RETALIATION IN RESPONSE TO SEXUAL HARASSMENT COMPLAINT

Paragraphs 1-47 above are incorporated herein by this reference.

48.     Sandra Walby was engaged in an activity which is a protected activity under both Title VII and the South Dakota Human Relations Act when she reported Mr. Rusk's sexually harassing behavior to the Lehman Trikes, U.S.A., Inc. Human Resources Department, and also when she assisted a co-worker in reporting Mr. Rusk's behavior to the Human Resources Department.

49.     After Sandra Walby assisted a co-worker in filing her complaint, Mr. Rusk sexually assaulted Sandra Walby as described above.

50.     After Sandra Walby complained of Mr. Rusk's behavior, Mr. Rusk further retaliated against Sandra Walby by refusing to allow her to work overtime hours as she had prior to her complaint, instructing co-workers that they could no longer assist Sandra Walby in performing her duties as they had prior to her complaint, by threatening Sandra Walby that if she did not complete all of her duties during regular business hours he would initiate disciplinary actions against her, and by instructing other employees to follow her around to observe her work.

51.     Upon information and belief, the reason Rusk changed the terms and conditions of Sandra Walby's employment as set forth in the preceding paragraph was because Sandra Walby assisted a co-worker in lodging a complaint about Mr. Rusk's sexually harassing behavior, and because Sandra Walby herself had lodged a complaint regarding Mr. Rusk's sexually harassing behavior.

52.     Defendant Lehman Trikes, U.S.A., Inc. is liable for Mr. Rusk's behavior because he was Sandra Walby's supervisor.

53.     Defendant Lehman Trikes U.S.A., Inc. retaliated against Sandra Walby for complaining about Mr. Rusk's behavior by failing to promptly initiate measures to insulate Ms. Walby from the potential of additional harassment or retaliation pending an investigation into her complaint.

54.     Defendant Lehman Trikes U.S.A., Inc. retaliated against Sandra Walby for complaining about Mr. Rusk's behavior by announcing in front of other employees that it had investigated complaints about Mr. Rusk but found he was the right man for the job.

55.     Defendant Lehman Trikes U.S.A., Inc. retaliated against Sandra Walby for complaining about Mr. Rusk's behavior by failing to promptly and fairly investigate her complaint, and by failing to transfer or otherwise reassign either Mr. Rusk or Ms. Walby so that Ms. Walby was no longer working under Mr. Rusk's supervision in the very same warehouse where he had sexually assaulted her.

56.     Defendant Lehman Trikes U.S.A., retaliated against Sandra Walby by allowing her to resign due to the intolerable working conditions described above.

57.     Defendant Lehman Trikes U.S.A., Inc. retaliated against Sandra Walby for complaining about Mr. Rusk's behavior by failing to offer to rehire Ms. Walby after investigating her complaint and finding it meritorious.

56.     Defendants' conduct violates Title VII of the Civil Rights Act of 1964 and the South Dakota Human Relations Act of 1972.

57.     Defendants' violations have caused Plaintiffs to incur damages including but not limited to lost wages and benefits, mental and emotional distress, loss of consortium, shame, humiliation and embarrassment.

COUNT III:  CONSTRUCTIVE DISCHARGE

Paragraphs 1-57 above are incorporated herein by this reference.

58.     Despite the fact Sandra Walby complained to Lehman Trikes U.S.A., Inc. that she had been sexually assaulted on company premises by her supervisor, Lehman Trikes U.S.A., Inc. did nothing to promptly investigate her complaint.

59.     Despite the fact that Sandra Walby had complained to Lehman Trikes U.S.A., Inc. about Mr. Rusk sexually assaulting her in the warehouse where she performed her duties, Lehman Trikes took no measures to protect Sandra Walby from further harm at Mr. Rusk's hands, and in fact condoned Mr. Rusk's behavior by announcing to all employees it had investigated complaints about Mr. Rusk but found that Mr. Rusk was the right man for the job and would remain in his position in spite of his actions.

60.     Despite the fact that Sandra Walby had been sexually assaulted by Mr. Rusk in the workplace, Sandra Walby was required to continue working under Mr. Rusk's supervision in the very same warehouse where he had attacked her.

61.     After complaining about Mr. Rusk's behavior, Mr. Rusk no longer allowed Sandra Walby to work overtime, ordered co-workers to no longer assist Sandra Walby with her work, warned Sandra Walby that if she did not complete her tasks during regular work hours he would instigate disciplinary action against her, and ordered other employees to follow her around closely observing her work.

62.     A reasonable employee required to work under such circumstances would believe that continuing to work for Lehman Trikes under those conditions would be intolerable, and Sandra Walby believed that continuing to work for Lehman Trikes under such conditions was intolerable.

63.     Upon information and belief Lehman Trikes U.S.A., Inc. and Sandra Walby's supervisor, Mr. Rusk, intentionally designed the conditions described above to force or coerce Sandra Walby to terminate her employment with Lehman Trikes.

64.     Because Lehman Trikes U.S.A., Inc. and Mr. Rusk made the working conditions for Sandra Walby so intolerable that a reasonable person, and Sandra Walby, could no longer stand to work under such conditions, Sandra Walby was constructively discharged from her employment with Lehman Trikes U.S.A., Inc.

65.     Defendants' conduct violates Title VII of the Civil Rights Act of 1964 and the South Dakota Human Relations Act of 1972.

66.     Defendants' violations have caused Plaintiffs to incur damages including but not limited to lost wages and benefits, mental and emotional distress, loss of consortium, shame, humiliation and embarrassment.

## COUNT IV:  NEGLIGENT SUPERVISION AND RETENTION

Paragraphs 1-66 above are incorporated herein by this reference.

67.     Lehman Trikes U.S.A., Inc. owed a duty to its employees including Sandra Walby to provide a safe workplace free from sexual harassment and sexual assault.

68.     Upon information and belief, Lehman Trikes U.S.A., Inc. knew or should have known that Mr. Rusk used vulgar language toward employees whom he supervised, used offensive sexually suggestive gestures towards employees whom he supervised, and displayed sexually suggestive images on his computer monitor in an area where his subordinates would be able to observe such images.

69. Upon information and belief, Mr. Rusk's supervisors failed to take prompt and effective measures to discipline Mr. Rusk for such behavior or in any other manner take action designed to eliminate such behavior.

70. Alternatively, if Lehman Trikes took any action designed to eliminate the behavior described in ¶63, such measures were ineffective and Lehman Trikes was negligent in retaining Mr. Rusk as an employee in a position where he would be allowed to continue to inflict such sexually harassing behavior on his subordinates.

71. Lehman Trikes U.S.A., Inc.'s negligent supervision and retention of Mr. Rusk enabled Mr. Rusk to continue to intimidate, sexually harass and sexually assault Sandra Walby.

72. As a proximate result of Lehman Trikes U.S.A., Inc.'s negligent supervision and retention of Mr. Rusk, Sandra Walby was sexually assaulted and sexually harassed and suffered damages including but not limited to lost wages and benefits, mental and emotional distress, loss of consortium, shame, humiliation and embarrassment.

## COUNT V: BATTERY

Paragraphs 1-72 above are incorporated herein by this reference.

73. Defendant Mike Rusk, Jr. sued in his individual capacity, intended to cause harmful and offensive physical contact with Sandra Walby when he snuck up behind her, grabbed her by the hips and lifted her into the air and thrusted his groin with his erect penis into Sandra Walby's buttocks.

74. At no time did Sandra Walby consent to such physical contact by Mr. Rusk.

75. As a result of Mr. Rusk's harmful and offensive contact with Sandra Walby, Sandra Walby has suffered damages including but not limited to lost wages and benefits, has

incurred expenses for psychological counseling, has suffered grave mental anguish, humiliation and shame, and has suffered a loss of consortium with her husband.

76.     Defendant Lehman Trikes U.S.A., Inc. is vicariously liable for Mr. Rusk's behavior because it had notice of facts which made it foreseeable that Mr. Rusk might engage in such behavior but failed to take reasonable steps to prevent such behavior thereby condoning such behavior.

COUNT VI:  INTENTIONAL OR RECKLESS INFLICTION OF EMOTIONAL DISTRESS

Paragraphs 1-76 above are incorporated herein by this reference.

77.     Mr. Rusk engaged in extreme and outrageous conduct when he sexually assaulted Sandra Walby as described above.

78.     When Mr. Rusk sexually assaulted Sandra Walby he intended to, or recklessly caused Sandra Walby to suffer severe emotional distress.

79.     As a result of Mr. Rusk's sexual assault, Sandra Walby did in fact suffer severe emotional distress.

80.     Sandra Walby's emotional distress has resulted in damages including but not limited to a loss of income, expenses for psychological counseling, a loss of enjoyment of life and a loss of consortium with her husband Bruce Walby.

81.     Defendant Lehman Trikes U.S.A., Inc. is vicariously liable for Mr. Rusk's behavior because it had notice of facts which made it foreseeable that Mr. Rusk might engage in such behavior but failed to take reasonable steps to prevent such behavior thereby condoning such behavior.

<u>COUNT VII:  LOSS OF CONSORTIUM</u>

Paragraphs 1-81 above are incorporated herein by this reference.

82.     As a result of the Defendants' conduct as described in the preceding paragraphs of this Complaint, Bruce Walby has been deprived of the services, aid, comfort, society, companionship and conjugal affections of Sandra Walby, and is entitled to compensation for that loss.

WHEREFORE, Plaintiffs respectfully request the following relief:

A.     For compensation for their economic losses including lost wages, benefits, medical expenses and other economic losses suffered both in the past and reasonably certain to be experienced in the future as a result of Defendants' wrongful conduct;

B.     For compensation for their pain, suffering, mental anguish, loss of consortium and loss of capacity of the enjoyment of life both past and reasonably certain to be experienced in the future as a result of the Defendants' conduct;

C.     Punitive and exemplary damages;

D.     For Plaintiff's attorneys fees;

E.     For Plaintiffs' costs and disbursements as allowed by law; and

F.     For any further relief as is appropriate under the circumstances.

**PLAINTIFFS DEMAND TRIAL BY JURY WITH RESPECT TO ALL ISSUES SET FORTH IN THIS COMPLAINT**

Respectfully submitted this 3rd day of November, 2009.

GUNDERSON, PALMER, NELSON
& ASHMORE, LLP

BY: _____
Donald P. Knudsen
440 Mt. Rushmore Road

P.O. Box 8045
Rapid City, SD 57709-8045
(605) 342-1078

FREDERICKSON LAW OFFICE
John R. Frederickson
PO Box 583
Deadwood, SD 57732
(605) 578-1903